| IN THE MATTER OF THE COMPLAINT | Case No. 13-CV-2743 (PJS/SER) |
|---|---|
| OF BRENNAN MARINE, INC., | |
| FOR EXONERATION FROM, OR | ORDER |
| OR LIMITATION OF, LIABILITY | |

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BRENNAN MARINE, INC.,

      Defendant,

v.

MV MEGAN McB,

      Defendant.

Neal W. Settergren and Robert Nienhuis, GOLDSTEIN & PRICE, LC; Richard J. Thomas, BURKE & THOMAS, PLLP, for Brennan Marine, Inc.

Gregory J. Egan, III and James W. Richgels, O'FLAHERTY, HEIM, EGAN & BIRNBAUM, LTD, for Danielle Trussoni, individually, as the wife of Tyler Trussoni at the time of his death, and as Special Administrator of the Estate of Tyler Trussoni.

Friedrich A. P. Siekert, UNITED STATES ATTORNEY'S OFFICE; Jessica G. Sullivan, UNITED STATES DEPARTMENT OF JUSTICE, for United States of America.

David J. Edquist and Steven L. Nelson, VON BRIESEN & ROPER, S.C.; John E. Radmer and Paula Weseman Theisen, MEAGHER & GEER, PLLP, for Twin Disc, Inc.

Carl J. Marshall and Kent B. Ryan, THE MILLER LAW FIRM, PLLC; Clifford M. Greene, David J. Wallace-Jackson, and Janine Wetzel Kimble, GREENE ESPEL PLLP, for Tell City Boat Works, Inc.

Richard J. Thomas, BURKE & THOMAS, PLLP, for MV Megan McB.

On July 3, 2013, the M/V MEGAN McB was serving as a lock-assist tugboat at Lock and Dam No. 7 on the Mississippi River near Dresbach, Minnesota. The tugboat became caught in the current, crashed into the dam, capsized, and sank. One of the crew members—Tyler Trussoni—drowned. The tugboat was owned and operated by Brennan Marine, Inc.

Brennan Marine filed a complaint seeking exoneration from (or limitation of) liability under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*. In response, Tyler Trussoni's widow, Danielle Trussoni ("Trussoni"), brought two claims against Brennan Marine: (1) on her own behalf, a wrongful-death action under the Jones Act, 46 U.S.C. § 30104, and (2) on behalf of her husband's estate, a survival action

under the general maritime law.[1]  *See* ECF No. 22 ¶ 9; ECF No. 23 ¶ 9.  Trussoni seeks

"pecuniary, non-pecuniary, and punitive damages."  ECF No. 23 ¶ 8.

This matter is before the Court on Brennan Marine's motion for partial dismissal

under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for partial judgment on the

pleadings under Fed. R. Civ. P. 12(c).  In essence, Brennan Marine asks this Court to rule

that Trussoni may not recover punitive or other non-pecuniary damages.

---

[1]The difference between a wrongful-death action and a survival action was succinctly explained by the Third Circuit as follows:

> A wrongful death cause of action belongs to the decedent's dependents . . . . It allows the beneficiaries to recover for the harm that *they* personally suffered as a result of the death, and it is totally independent of any cause of action the decedent may have had for his or her own personal injuries.  Damages are determined by what the beneficiaries would have "received" from the decedent and can include recovery for pecuniary losses like lost monetary support, and for non-pecuniary losses like loss of society. . . . A survival action, in contrast, belongs to the estate of the deceased (although it is usually brought by the deceased's relatives acting in a representative capacity) and allows recovery for the injury to the *deceased* from the action causing death.  Under a survival action, the decedent's representative recovers for the decedent's pain and suffering, medical expenses, lost earnings (both past and future), and funeral expenses.

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 637 (3d Cir. 1994), *aff'd*, 516 U.S. 199 (1996).

# I. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ.

P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and

draw all reasonable inferences in the plaintiff's favor.  *See Aten v. Scottsdale Ins. Co.*, 511

F.3d 818, 820 (8th Cir. 2008).  Although the factual allegations in the complaint need not

be detailed, they must be sufficient to "raise a right to relief above the speculative

level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must

"state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing the

sufficiency of the complaint, a court may disregard legal conclusions that are couched

as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is assessed

under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See*

*Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

# II. ANALYSIS

As noted, Trussoni has brought two claims against Brennan Marine.  First,

Trussoni is pursuing a wrongful-death action under the Jones Act, 46 U.S.C. § 30104.  In

order to recover on this claim, Trussoni must prove, among other things, that Brennan

Marine acted negligently in its operation of the M/V MEGAN McB.  Second, Trussoni is

pursuing a survival action under the general maritime law.  In order to recover on this

claim, Trussoni must prove, among other things, that the M/V MEGAN McB was "unseaworthy" at the time of her husband's death. If the M/V MEGAN McB was unseaworthy, and its unseaworthiness caused the death of Tyler Trussoni, then Brennan Marine (as the vessel's owner) is strictly liable to Trussoni. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 25 (1990) (explaining that "the warranty of seaworthiness [imposes] a strict liability obligation" under which "[t]he shipowner [is] liable for failure to supply a safe ship irrespective of fault and irrespective of the intervening negligence of crew members").

With respect to Trussoni's negligence claim under the Jones Act, the parties agree that Trussoni may recover only pecuniary damages, but they disagree about whether punitive damages are pecuniary. With respect to Trussoni's unseaworthiness claim under the general maritime law, the parties primarily disagree about whether Trussoni can recover punitive damages. The Court's analysis of both disputes is controlled by the Supreme Court's decision in *Miles v. Apex Marine Corporation*, 498 U.S. 19 (1990).

## A. *Miles*

*Miles* closely resembles this case. There, as here, a close relative of a seaman who died onboard a vessel—there, the seaman's mother; here, the seaman's wife—brought claims against the vessel's owner and operator. There, as here, a wrongful-death action was brought under the Jones Act. And there, as here, a survival action sounding in

unseaworthiness was brought under the general maritime law. (In *Miles*, the mother also brought a wrongful-death action sounding in unseaworthiness; Trussoni has not brought such a claim.)

The Supreme Court had to address two questions about the scope of the recovery available to the mother under the general maritime law. First, the Supreme Court had to determine whether the mother could recover damages for the loss of society of her son in her wrongful-death action. Second, the Supreme Court had to determine whether the mother could recover her son's future earnings in her survival action.

The Supreme Court devoted much of its *Miles* opinion to describing the historical context. The general maritime law did not recognize a cause of action for wrongful death or for survival. *Id.* at 23, 33. Congress enacted the Jones Act in 1920 to provide seamen with causes of action for personal injury, wrongful death, and survival based on their employers' negligence. *See id.* at 29. Critically, however, the Jones Act provided that "[l]aws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section." 46 U.S.C. § 30104. In other words, any limitation imposed on personal-injury, wrongful-death, or survival actions brought by railroad workers under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq.*, were also imposed on personal-injury, wrongful-death, or survival actions brought by seamen under the Jones Act.

The Jones Act does not, on its face, limit the availability of damages. Neither does FELA. But in *Michigan Central Railroad Company v. Vreeland*, 227 U.S. 59, 69-71 (1913), the Supreme Court held that a railroad employee bringing a claim under FELA could recover only pecuniary—and not non-pecuniary—damages. And in *Miles*, the Supreme Court confirmed that, because non-pecuniary damages are not available in a lawsuit brought under FELA, they are also not available in a lawsuit brought under the Jones Act: "When Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." *Miles*, 498 U.S. at 32. Because damages for loss of society are a form of "recovery for non-pecuniary loss," *id.* at 31, the Court held that "[t]here is no recovery for loss of society in a Jones Act wrongful death action," *id.* at 32.

The more difficult question, though, was whether damages for loss of society could be recovered in a wrongful-death action brought under the general maritime law. As noted, at the time that the Jones Act was passed, the general maritime law did not recognize a cause of action for wrongful death. This was by virtue of *The Harrisburg*, 119 U.S. 199 (1886). But *The Harrisburg* was overturned in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), which recognized a wrongful-death cause of action under the general maritime law. *Moragne* involved a lawsuit arising out of the death of a

longshoreman, but *Miles* formally extended its holding to encompass a lawsuit arising

out of the death of a seaman.  *Miles*, 498 U.S. at 30 ("[T]here is a general maritime cause

of action for the wrongful death of a seaman . . . .").

The Court held, however, that although the general maritime law recognized a

wrongful-death action arising out of the death of a seaman, damages for loss of society

were not recoverable in such an action.  The Court explained:

> The Jones Act applies when a seaman has been killed as a
> result of negligence, and it limits recovery to pecuniary loss.
> The general maritime claim here alleged that [the seaman]
> had been killed as a result of the unseaworthiness of the
> vessel.  It would be inconsistent with our place in the
> constitutional scheme were we to sanction more expansive
> remedies in a judicially created cause of action in which
> liability is without fault than Congress has allowed in cases of
> death resulting from negligence.  We must conclude that
> there is no recovery for loss of society in a general maritime
> action for the wrongful death of a Jones Act seaman.

*Id.* at 32-33.

In sum, *Miles* reasoned as follows:  (1) at the time of the enactment of the Jones

Act, the general maritime law did not recognize a wrongful-death action; (2) the Jones

Act created a wrongful-death action sounding in negligence, but limited recovery to

pecuniary loss; (3) after passage of the Jones Act, the Court recognized a wrongful-death

action sounding in unseaworthiness under the general maritime law (which is a species

of common law); (4) the Court would be acting outside of its "place in the constitutional

scheme" if it allowed a broader recovery on a no-fault, judicially created unseaworthiness claim than Congress had allowed on the corresponding fault-based, legislatively-created claim under the Jones Act.

The Court used similar reasoning in holding that the income that a deceased seaman would have earned but for his death is not recoverable in a survival action. The Court noted that, although "[u]nder traditional maritime law . . . there is no right of survival," *id.* at 33, several of the courts of appeals "have relied on *Moragne* to hold that there is a general maritime right of survival," *id.* at 34. The Court declined to reach the question of whether a general maritime right of survival should be recognized in light of *Moragne*, holding that, even if such a cause of action were to be recognized, it would not encompass recovery of the lost income of the deceased seaman. *Id.* at 33-36. The Court's reasoning tracked its reasoning with respect to damages for loss of society: (1) at the time of the enactment of the Jones Act, the general maritime law did not recognize a survival action; (2) the Jones Act created a survival action, but "recovery is limited to losses suffered during the decedent's lifetime," *id.* at 35; (3) if, after passage of the Jones Act, the Court were to recognize a survival action under the general maritime law, the Court would not allow a broader recovery on that judicially created claim than Congress had allowed on a survival action under the Jones Act. As the Court explained:

> We sail in occupied waters.  Maritime tort law is now
> dominated by federal statute, and we are not free to expand
> remedies at will simply because it might work to the benefit
> of seamen and those dependent upon them.  Congress has
> placed limits on recovery in survival actions that we cannot
> exceed.  Because this case involves the death of a seaman, we
> must look to the Jones Act.
>
> The Jones Act/FELA survival provision limits recovery
> to losses suffered during the decedent's lifetime. . . . Congress
> has limited the survival right for seamen's injuries resulting
> from negligence.  As with loss of society in wrongful death
> actions, this forecloses more expansive remedies in a general
> maritime action founded on strict liability. . . . Because [the
> seaman's] estate cannot recover for his lost future income
> under the Jones Act, it cannot do so under general maritime
> law.

*Id.* at 36.

Having reviewed *Miles*, the Court now turns to its implications for the two claims

brought by Trussoni.

### B.  Jones Act Claim

*Miles* explicitly held—and the parties agree—that Trussoni can recover only

pecuniary damages under the Jones Act.  *Id.* at 32 ("The Jones Act . . . limits recovery to

pecuniary loss.").  What the parties dispute is whether punitive damages are

(recoverable) pecuniary damages or (non-recoverable) non-pecuniary damages.

As explained above, punitive damages are not available under the Jones Act

unless they are available under FELA.  *See* 46 U.S.C. § 30104.  "It has been the unanimous

judgment of the courts since before the enactment of the Jones Act that punitive damages are not recoverable under [FELA]." *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1457 (6th Cir. 1993). Unsurprisingly, then, every court to have addressed the question has held that punitive damages are also not recoverable under the Jones Act. *See McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 388 (5th Cir. 2014) ("No case under FELA has allowed punitive damages, whether for personal injury or death. Because the Jones Act adopted FELA as the predicate for liability and damages for seamen, no cases have awarded punitive damages under the Jones Act." (footnotes omitted)); *Miller*, 989 F.2d at 1457 ("Punitive damages are not . . . recoverable under the Jones Act."); *Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir. 1984) ("Punitive damages . . . may not be awarded on a claim of negligence based on the Jones Act."); *Anderson v. Texaco, Inc.*, 797 F. Supp. 531, 534 (E.D. La. 1992) ("[T]he post-*Miles* district court cases, in this district and in others, speak with one voice in concluding that punitive damages are nonpecuniary and, therefore, are not recoverable under *Miles*'s interpretation of the Jones Act.").

This Court agrees with the unanimous weight of opinion. The Supreme Court has struggled to explain which *compensatory* damages are pecuniary and which *compensatory* damages are non-pecuniary. In *Vreeland*, for example, the Supreme Court said that "[a] pecuniary loss or damage must be one which can be measured by some standard," and cited as an example of pecuniary loss the following: "when the beneficiary is a child, . . .

the loss of that care, counsel, training, and education which it might . . . have reasonably received from the parent." *Vreeland*, 227 U.S. at 71. Yet *Miles* identified a mother's loss of the society of her son as a "non-pecuniary loss." *Miles*, 498 U.S. at 31. It is difficult to understand why a child's loss of the "care" and "counsel" of a parent is pecuniary, but a parent's loss of the society of her child is non-pecuniary. The one does not seem any more susceptible to being "measured by some standard" than the other. It is also difficult to understand why the pain and suffering of the deceased seaman's beneficiaries is deemed to be non-pecuniary, but the pain and suffering of the deceased seaman himself is deemed to be pecuniary—as some lower courts have held. *See, e.g.*, *Cook v. Ross Island Sand & Gravel Co.*, 626 F.2d 746, 748-49 (9th Cir. 1980).

That said, "[t]here can be little doubt that punitive damages are nonpecuniary in character" and therefore cannot be recovered under the Jones Act. *Anderson*, 797 F. Supp. at 534; *see also McBride*, 768 F.3d at 384 ("[P]unitive damages are non-pecuniary losses . . . ."); *Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1094 (2d Cir. 1993) (describing punitive damages as "nonpecuniary"); *Kopczynski*, 742 F.2d at 561 ("Punitive damages are non-pecuniary."); *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1506 (5th Cir. 1995) ("[P]unitive damages . . . are also rightfully classified as non-pecuniary." (footnote omitted)), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009). Whatever struggles the courts have had in identifying *which* compensatory damages are

pecuniary, they have agreed that, at a minimum, pecuniary damages *are* compensatory—that is, they are meant to compensate someone for some kind of loss. *See Vreeland*, 227 U.S. at 70-71 (discussing damages available under FELA in terms of compensation for pecuniary loss). Punitive damages, by contrast, are not meant to compensate; they are meant to punish and deter. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008) ("[T]he consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct."); *see also McBride*, 768 F.3d at 391 ("Based on *Miles* and other Supreme Court and circuit authority, pecuniary losses are designed to compensate an injured person or his survivors. Punitive damages, which are designed to punish the wrongdoer rather than compensate the victim, by definition are not pecuniary losses.").

Against this overwhelming weight of authority, Trussoni makes only one argument that merits comment. Trussoni points out that, as a general matter, recovery under the Death on the High Seas Act ("DOHSA") is limited to "pecuniary loss." 46 U.S.C. § 30303 ("The recovery in an action under this chapter shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought."). DOHSA creates an exception, however, for certain commercial-aviation accidents: "In an action under this chapter, if the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from

-13-

the shore of the United States, additional compensation is recoverable for nonpecuniary damages, but punitive damages are not recoverable." 46 U.S.C. § 30307(b). For purposes of this exception, DOHSA defines "nonpecuniary damages" to mean "damages for loss of care, comfort, and companionship." 46 U.S.C. § 30307(a).

Trussoni touts this as evidence that Congress does not believe that the term "nonpecuniary damages" encompasses punitive damages. First, she says, § 30307(a) explicitly defines "nonpecuniary damages," and that definition does not include punitive damages. This is itself evidence that Congress regards punitive damages as pecuniary. Second, she points out that after § 30307(b) provides that nonpecuniary damages are recoverable, it adds: "but punitive damages are not recoverable." This punitive-damages clause would have no purpose if punitive damages were nonpecuniary; the preceding clause allows recovery only for "nonpecuniary damages," and "nonpecuniary damages" is explicitly defined not to include punitive damages, so nothing in the preceding clause could be read to permit recovery of punitive damages. Thus, argues Trussoni, punitive damages must be considered pecuniary for purposes of DOHSA, and the punitive-damages clause must have been inserted to exclude one particular type of pecuniary damages in lawsuits for deaths resulting from certain aviation accidents.

This argument is clever, but ultimately unavailing for a number of reasons:

First, § 30307(a) defines "nonpecuniary damages" only for one section within DOHSA; it does not purport to define the term for all of DOHSA, much less for FELA or the Jones Act or any other purpose.

Second, § 30307(a)'s definition of "nonpecuniary" is not consistent with the Supreme Court's definition of the term in the context of FELA and the Jones Act. For example, a child's loss of the care and comfort of her parent would be deemed nonpecuniary under § 30307(a) but pecuniary under *Vreeland*. 227 U.S. at 71.

Third, the fact that § 30307(a) defines "nonpecuniary damages" to include only "damages for loss of care, comfort, and companionship" does not mean that Congress regarded other types of damages (such as punitive damages) as being pecuniary. Rather, Congress used § 30307(a) to define which types of nonpecuniary damages would be *recoverable* under § 30307(b). Congress may very well have regarded punitive damages as a type of nonpecuniary damages, but not wanted to make them recoverable.

Fourth, if Trussoni's argument is correct—and Congress regards punitive damages as pecuniary for purposes of DOHSA, and FELA, and the Jones Act—then there should be countless instances in which plaintiffs have recovered punitive damages under one of those acts. But Trussoni concedes that she is unaware of a single case in which a plaintiff has recovered punitive damages in a DOHSA case, or a FELA case, or a Jones Act case.

Finally, if Trussoni's reading of § 30307(b) is correct, then the section is puzzling. As noted above, DOHSA generally permits recovery only of pecuniary damages. *See* 46 U.S.C. § 30303. If Trussoni is correct that punitive damages are pecuniary, then DOHSA would generally permit recovery of punitive damages. Section 30307(b) plainly singles out one category of lawsuits for favorable treatment; it permits the recovery of nonpecuniary damages (which are otherwise not available under DOHSA) in lawsuits arising out of a "death [that] resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States." But on Trussoni's reading, this same section—a section that, on its face, extends uniquely *favorable* treatment to a specific category of lawsuits—would at the same time bar punitive damages, when every other DOHSA plaintiff could recover such damages.

When pressed at oral argument, Trussoni could suggest no reason why Congress would authorize the recovery of punitive damages for every single death that occurs on the high seas—including commercial-aviation deaths that occur within 12 nautical miles of the shore of the United States—but exclude punitive damages when commercial-aviation deaths occur more than 12 nautical miles from shore. And Trussoni could suggest no reason why Congress would treat such deaths more favorably by allowing recovery for loss of care, comfort, and companionship, but less favorably by barring recovery for punitive damages.

It appears to the Court that Congress likely included the phrase "but punitive damages are not recoverable" because punitive damages *are* generally regarded as nonpecuniary.  Using both belt and suspenders, Congress wanted to make it crystal clear that by authorizing the recovery of certain nonpecuniary damages in a certain category of lawsuits, it was not also authorizing the recovery of punitive damages.  One can understand why the commercial-aviation industry might have accepted potential liability for loss of care, comfort, and companionship of accident victims, but pressed Congress to make it unmistakably clear that § 30307(b) was not opening the door to potentially ruinous punitive damages.

The bottom line is that, as Trussoni admitted at oral argument, no court has ever awarded punitive damages under the Jones Act.  This Court will not be the first.  The Court grants Brennan Marine's motion to dismiss Trussoni's claim for punitive damages under the Jones Act.

### C.  General Maritime Claim

Trussoni also seeks punitive damages in her survival action, which takes the form of an unseaworthiness claim brought under the general maritime law.

The question whether punitive damages (and other non-pecuniary damages) are available for unseaworthiness claims was recently addressed by the en banc Fifth Circuit in *McBride v. Estis Well Service, L.L.C.*, 768 F.3d 382 (5th Cir. 2014) (en banc).  The majority

found the question was "controlled by the Supreme Court's decision in *Miles v. Apex Marine Corp.*," *id.* at 384, and held that, under *Miles*, punitive damages cannot be recovered in a wrongful-death action brought as an unseaworthiness claim under the general maritime law, *id.* at 391 ("On the subject of recoverable damages in a wrongful death case under the . . . general maritime law, [the Supreme Court] has limited the survivor's recovery to pecuniary losses.").

The Court agrees with *McBride*, and finds that its reasoning with respect to the wrongful-death action brought by the personal representative in that case applies with full force to the survival action brought by Trussoni in this case. In particular, the Court finds that punitive damages are not available for the unseaworthiness claim brought in this case (a survival action) for precisely the reason that damages for loss of society were not available for the unseaworthiness claim brought in *Miles* (a wrongful-death action):

(1) In *Miles*, the Court explained that, at the time of the enactment of the Jones Act, the general maritime law did not recognize a wrongful-death action. *Miles*, 498 U.S. at 23. The general maritime law also did not recognize a survival action. *Id.* at 33.

(2) In *Miles*, the Court explained that the Jones Act created a wrongful-death action sounding in negligence, but limited recovery to pecuniary loss. *Id.* at 23-24, 32. The Jones Act also created a survival action sounding in negligence, 45 U.S.C. § 59, but

limited recovery to pecuniary loss, *Miles*, 498 U.S. at 32—which, as explained above, excludes the recovery of punitive damages.

(3) In *Miles*, the Court explained that, after enactment of the Jones Act, the courts recognized a wrongful-death action sounding in unseaworthiness under the general maritime law. *Id.* at 25-28. Likewise, after enactment of the Jones Act, the courts recognized a survival action sounding in unseaworthiness under the general maritime law. *Id.* at 34.

(4) In *Miles*, the Court held that it would be acting outside of its "place in the constitutional scheme" if it allowed a broader recovery on a no-fault, judicially created unseaworthiness claim for wrongful death than Congress had allowed on a fault-based, legislatively-created claim for wrongful death under the Jones Act. *Id.* at 32-33. Precisely the same can be said about Trussoni's survival action. It, too, is a no-fault unseaworthiness claim created by the judiciary after passage of the Jones Act. It, too, cannot result in a broader recovery than a survival action under the Jones Act. Thus, because punitive damages cannot be recovered in a survival action brought under the Jones Act, punitive damages also cannot be recovered in a survival action brought as an unseaworthiness claim under the general maritime law.

Trussoni argues, as did the dissent in *McBride*, that this issue is controlled, not by *Miles*, but by *Atlantic Sounding Company v. Townsend*, 557 U.S. 404 (2009). In *Townsend*,

the Supreme Court held that an injured seaman may recover punitive damages from an employer who willfully fails to pay maintenance and cure[2]—a claim under the general maritime law. But *Townsend* did not challenge the reasoning of *Miles*; to the contrary, *Townsend* insisted that "[t]he reasoning of *Miles* remains sound." *Id.* at 420.

Applying that reasoning, *Townsend* found that a seaman can recover punitive damages in a maintenance-and-cure action because, unlike the cause of action for wrongful death that was at issue in *Miles*, the cause of action for maintenance and cure—and the remedy of punitive damages for that cause of action—*did* exist at the time that the Jones Act was enacted. To quote *Townsend*: "Unlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act." *Id.* In other words, neither the cause of action (maintenance and cure) nor the remedy (punitive damages) was created by the judiciary *after* passage of the Jones Act. And thus there was no concern in *Townsend*, as there was in *Miles*, about the judiciary creating a cause of action or a remedy under the general maritime law that was broader than the corresponding cause of action or remedy in the Jones Act.

---

[2] "A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

Trussoni tries to distinguish *Miles* by arguing that *Miles* concerned a claim for

wrongful death (which was not available at the time of the enactment of the Jones Act),

rather than a claim for unseaworthiness (which was available at the time of the

enactment of the Jones Act).  ECF No. 116 at 16–17.  Thus, says Trussoni, her

unseaworthiness claim is like the maintenance-and-cure claim in *Townsend* rather than

like the wrongful-death claim in *Miles*.  The same argument was made by the dissent in

*McBride*:

> . . . *Townsend* established a straightforward rule, fully faithful
> to its earlier *Miles* decision: if a general maritime law cause of
> action and remedy were established before the passage of the
> Jones Act, and the Jones Act did not address that cause of
> action or remedy, then that remedy remains available under
> that cause of action unless and until Congress intercedes. . . .
> [T]he rule's premises are satisfied in this case: the cause of
> action (unseaworthiness) and the remedy (punitive damages)
> were both established before the passage of the Jones Act,
> and that statute did not address unseaworthiness or its
> remedies . . . .

*McBride*, 768 F.3d at 412-13 (Higginson, J., dissenting).

The problem with this argument is that it fails to distinguish *among*

unseaworthiness claims—or among remedies available for unseaworthiness claims.

Neither Trussoni nor the *McBride* dissent comes to grips with the fact that the wrongful-

death claim in *Miles* was *an unseaworthiness claim*.  At the beginning of the *Miles* opinion,

the Supreme Court described the two claims brought by the plaintiff as a claim for

"negligence under the Jones Act" and a claim for "breach of the warranty of seaworthiness." 498 U.S. at 21. Later the Supreme Court described "the general maritime claim" in *Miles* as a claim "that [the seaman] had been killed as a result of the unseaworthiness of the vessel." *Id.* at 32. And in *Townsend*, the Supreme Court described *Miles* as having "grapple[d] with the . . . question whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness." 557 U.S. at 419.

Indeed, the fact that the claim under the general maritime law in *Miles* was a claim for unseaworthiness was critical to the Court's analysis. Perhaps the most important sentence in the *Miles* opinion was the following: "It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." 498 U.S. at 32-33. The phrase "in which liability is without fault" is a reference to the fact that the claim in *Miles* was a claim for unseaworthiness.

Both in *Miles* and *Townsend*, the Supreme Court emphasized that the unseaworthiness claim in *Miles* had *not* been recognized at the time of the passage of the Jones Act. But, as Trussoni and the *McBride* dissent point out, unseaworthiness claims *were* generally recognized at the time of the passage of the Jones Act. *See McBride*, 768

F.3d at 419 (Higginson, J., dissenting) ("Like maintenance and cure, unseaworthiness was established as a general maritime claim before the passage of the Jones Act . . . ."). Obviously, then, when *Miles* and *Townsend* referred to whether a cause of action had been recognized under the general maritime law at the time of the passage of the Jones Act, they were referring to the particular *type* of unseaworthiness claim, not to unseaworthiness claims generally. This is evidenced by the fact that *Miles* repeatedly referred to a particular *type* of unseaworthiness claim: a "suit . . . to recover damages for wrongful death due to the unseaworthiness of the ship," *Miles*, 498 U.S. at 23; "a wrongful death action sounding in unseaworthiness," *id.*; "a claim for wrongful death resulting from unseaworthiness," *id.* at 26; "recovery for death from unseaworthiness," *id.* at 28; "recovery for the wrongful death of a seaman resulting from the unseaworthiness of the vessel," *id.* at 29; "recovery under a state statute for the wrongful death of a seaman due to unseaworthiness," *id.*; "recovery for wrongful death due to unseaworthiness," *id.*

In short, what is crucial under *Miles* and *Townsend* is whether the particular *type* of unseaworthiness claim (in *Miles*, a wrongful-death action; here, a survival action) was recognized at the time of the passage of the Jones Act. If a particular type of claim—or a particular type of remedy—was not created until after passage of the Jones Act, then, according to *Townsend*, its outer limits cannot exceed the outer limits of its counterpart in

the Jones Act:  "It would [be] illegitimate to create common-law remedies that exceed[]

those remedies statutorily available under the Jones Act . . . ."  *Townsend*, 557 U.S. at 420.

      In *Miles*, the plaintiff was not permitted to recover damages for loss of society

because her unseaworthiness claim was a wrongful-death action, and at the time of the

enactment of the Jones Act, the general maritime law did not recognize a wrongful-death

action.  In *Townsend*, the plaintiff was permitted to recover punitive damages for his

maintenance-and-cure action because at the time of the enactment of the Jones Act, the

general maritime law did recognize a cause of action for maintenance and cure (and

allowed the recovery of punitive damages).  Trussoni's claim is like the claim in *Miles*

and not like the claim in *Townsend*.  Her unseaworthiness claim is a survival action, and

at the time of the enactment of the Jones Act, the general maritime law did not recognize

a survival action.  Because the general maritime law did not recognize a survival action

until after passage of the Jones Act, and because punitive damages cannot be recovered

in a survival action brought under the Jones Act, punitive damages also cannot be

recovered in a survival action brought under the general maritime law.  The Court

therefore grants Brennan Marine's motion to dismiss Trussoni's claim for punitive

damages (and other non-pecuniary damages) under the general maritime law.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

the Court GRANTS Brennan Marine's motion for dismissal pursuant to Fed. R. Civ.

P. 12(b)(6) and DENIES AS MOOT Brennan Marine's motion for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c).  ECF No. 96.  Accordingly, IT IS HEREBY

ORDERED THAT all of Trussoni's claims for punitive and other non-pecuniary damages

are DISMISSED WITH PREJUDICE AND ON THE MERITS.


  Dated: August 20, 2015

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge